UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARISTEIDIS POLYZOPOULOS, *et al.*,
    Plaintiffs

v.

MERRICK GARLAND, *et al.*,
    Defendants

Civil Action No. 20-0804 (CKK)

**MEMORANDUM OPINION**
(April 14, 2021)

In 2019, Colonial Marble determined that it would like to hire Mr. Aristeidis Polyzopoulos, a foreign national residing in Greece. To secure employment authorization for Mr. Polyzopoulos, Colonial Marble filed an I-140 petition on his behalf with the United States Citizenship and Immigration Services ("USCIS"). After USCIS initially approved the I-140 petition, Mr. Polyzopoulos appeared for a consular interview at the United States Embassy in Athens, Greece. A consular officer with the State Department, however, denied Mr. Polyzopoulos's application for an immigrant visa, and, shortly thereafter, USCIS revoked its original approval of Colonial Marble's I-140 petition on behalf of Mr. Polyzopoulos.

In response, Colonial Marble and Mr. Polyzopoulos (collectively, "Plaintiffs") have now filed a civil action against the United States Attorney General, the Secretary of the Department of Homeland Security, the Acting Director of USCIS, the Secretary of State, and the U.S. Consul General of the U.S. Embassy in Athens (collectively, "Defendants"), to challenge (1) USCIS's I-140 petition revocation and (2) the State Department's denial of Mr. Polyzopoulos's visa application. Now pending before the Court, is Defendants' [16] Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Upon

1

consideration of the briefing, the relevant authorities, and the record as a whole,[1] the Court will **GRANT** Defendants' Motion and **DISMISS** Plaintiffs' Amended Complaint in its entirety.

## I. BACKGROUND

### A. Statutory Framework

This case involves Plaintiffs' attempt to secure employment authorization for Mr. Polyzopoulos, a foreign national from Greece. *See* Am. Compl. ¶¶ 10–34. Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, companies attempting to permanently employ alien workers must generally follow a three-step process. *See Raval v. USCIS*, 369 F. Supp. 3d 205, 208 (D.D.C. 2019). *First*, the American employer must identify the alien worker as eligible "for an open and advertised position," and then "ask[] the Secretary of Labor to certify that (1) the employer attempted to recruit U.S. workers in good faith; (2) no U.S. worker is qualified, able, willing, or available for such employment; and (3) employing the alien worker will not adversely affect U.S. wages or working conditions." *IQ Sys., Inc. v. Mayorkas*, 667 F.Supp.2d 105, 107 (D.D.C. 2009) (citing 8 U.S.C. § 1182(a)(5) and 20 C.F.R. § 656.10(a) & (c)).

*Second*, "[o]nce the [labor] certification is obtained, the employer must [then] submit the certification along with an I-140 visa petition to [] USCIS on behalf of the non-citizen worker, who is known as the 'beneficiary' to the petition." *Vemuri v. Napolitano*, 845 F. Supp. 2d 125, 127 (D.D.C. 2012) (quoting 8 C.F.R. § 204.5(*l*)(1)). In support of its I-140 petition, the employer must demonstrate that the beneficiary meets the requisite job requirements and that the employer can

---

[1] The Court's consideration has focused on the following briefing and material submitted by the parties:
- Am. Compl., ECF No. 13;
- Defs.' Mem. of Law in Supp. of Mot. to Dismiss Am. Compl. ("Defs.' Mot."), ECF No 16-1;
- Pls.' Resp. to Defs.' Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 17; and,
- Defs.' Reply in Supp. of its Mot. to Dismiss, ECF No. 18.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

2

pay the beneficiary the wages specified in its labor certification. *See id.* (citing 8 C.F.R. §§ 204.5(*l*)(3)(ii), 204.5(g)(2)). The petitioner ultimately bears the burden of establishing to USCIS the beneficiary's eligibility for the requested immigration benefit, by a preponderance of the evidence. *See* 8 U.S.C. § 1361.

*Third*, if USCIS approves the I-140 petition, a non-citizen beneficiary residing outside of the United States must then apply for a consular visa with the State Department, to provide for his admission into the United States. *See* 8 U.S.C. §§ 1181(a), 1182(a)(7), 1201(a)(1).[2] "The INA confers upon consular officers exclusive authority to review applications for visas." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999) (citing 8 U.S.C. §§ 1104(a), 1201(a)); *see also* 8 U.S.C. § 1361. Under State Department regulations, a consular officer generally must either grant or refuse a visa application, *see* 22 C.F.R. § 42.81, and, by statute, a consular officer shall not issue a visa to an alien "if . . . it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law," 8 U.S.C. § 1201(g). A consular officer may also return a petition to USCIS "if the officer knows or has reason to believe that approval of the petition was obtained by fraud, misrepresentation, or other unlawful means." 22 C.F.R. § 42.43(a). In turn, USCIS "may, at any time, for what [it] deems good and sufficient cause, revoke the approval of" an I-140 petition. 8 U.S.C. § 1155; *see also Raval*, 369 F. Supp. 3d at 209.

---

[2] Where USCIS approves an I-140 petition for a non-citizen worker currently residing *within* the United States, that individual may file an I-485 Application to Register Permanent Residence or Adjust Status. *See Vermuri*, 845 F. Supp. 2d at 127 (citing 8 U.S.C. § 1255(a)).

3

**B. Factual and Procedural Background**

Plaintiff Aristeidis Polyzopoulos "is a native and citizen of Greece." Am. Compl. ¶ 11. In 2019, Plaintiff Colonial Marble, an American company, sought to hire Mr. Polyzopoulos as an alien worker and, therefore, pursued a specialized employment visa on his behalf. *See id.* ¶¶ 10–11. Colonial Marble began the process by submitting an "Application for Permanent Employment Certificate" to the Department of Labor, *id.* ¶ 11, which the Department of Labor certified on March 20, 2019, *id.* ¶ 12. After receiving this labor certification, Colonial Marble then filed an I-140 petition with USCIS, on behalf of Mr. Polyzopoulos, on April 9, 2019. *See id.* ¶ 13. On April 16, 2019, USCIS approved Colonial Marble's I-140 Petition for Mr. Polyzopoulos. *See id.* ¶ 14.

Mr. Polyzopoulos subsequently appeared for a consular interview with a State Department consular officer at the United States Embassy in Athens, Greece, on October 16, 2019. *See id.* ¶ 15. "At the interview," however, Mr. Polyzopoulos "was given a Visa Refusal Worksheet indicating that his Application [for a visa] was being denied based on 8 U.S.C. § 1182(a)(5)(A)." *Id.* ¶ 16; *see also* Pls.' Ex. D (Visa Refusal Worksheet), ECF No. 14-1, at 17. The State Department further explained that "the consular officer determined that the labor certification in this case was obtained by fraud or misrepresentation of a material fact based on [Mr.] Polyzopoulos's responses at the consular interview." Am. Compl. ¶ 19. Additionally, the State Department informed Mr. Polyzopoulos of its intention to return his I-140 petition to USCIS "with a recommendation that it be revoked." *Id.* ¶ 20.

Counsel for Mr. Polyzopoulos protested the consular officer's visa denial, asserting that the labor certification for Mr. Polyzopoulos was valid. *See id.* ¶¶ 18, 21. In response, the State Department indicated on November 5, 2019 that they were "were willing to review [Mr. Polyzopoulos's] timeline of filing events and [would] consider this in light of any additional DOL

4

policy documents" presented. *Id.* ¶ 22. Counsel for Mr. Polyzopolous responded to the State Department on November 7, 2019 "with the requested timeline of filing events, and further cited the relevant regulations to showing that the labor certification process was fully complied with by Plaintiffs." *Id.* ¶ 23. In December 2019, the State Department subsequently notified Plaintiffs that their request for reconsideration remained pending. *See id.* ¶¶ 25, 28. But after receiving no response from the State Department by March 2020, Plaintiffs decided to file a civil action against the government in this Court. Therein, Plaintiffs requested that the Court declare that Mr. Polyzopoulos "properly established eligibility for an immigrant visa via consular process" and issue an injunction compelling the State Department to "reconsider [Mr. Polyzopoulos's] application" for a visa. Compl., ECF No. 1, ¶¶ 30, 33.

In May 2020, after Plaintiffs filed their initial complaint in this case, USCIS expressed its intention to revoke Plaintiffs' previously-approved I-140 petition. Am. Compl. ¶ 30. In the agency's Notice of Intent to Revoke ("NOIR"), it explained that the State Department had returned the I-140 petition to USCIS "because it appeared that the job offer [from Colonial Marble] was not clearly open to U.S. workers, [that Colonial Marble] did not establish its ability to pay, and [that Colonial Marble] willfully misrepresented that the job was clearly open to U.S. workers, a material fact." Pls.' Ex. F (NOIR), ECF No. 14-2, at 1. Plaintiffs timely responded to USCIS's stated concerns, *see* Am. Compl. ¶ 31, but on June 30, 2020, USCIS formally revoked its approval of Plaintiffs' I-140 petition, *see* Pls.' Ex. G (Not. of Revocation), ECF No. 14-3, at 1.

On October 3, 2020, Plaintiffs amended their pleadings to account for USCIS's recent revocation of their I-140 petition. In their Amended Complaint, Plaintiffs now ask this Court to review (1) the State Department's denial of Mr. Polyzopoulos's visa application *and* (2) USCIS's revocation of Plaintiffs' I-140 petition. *See, e.g.*, Am. Compl. ¶¶ 35–37, 43. Specifically, Plaintiffs

request that the Court invalidate the State Department's original visa denial and USCIS's petition revocation, then declare that Plaintiffs are eligible for a new I-140 petition and compel the State Department to reconsider Mr. Polyzopoulos's visa application. *See id.* ¶¶ 58–65. In turn, Defendants have moved to dismiss Plaintiffs' action in its entirety under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The parties have now fully briefed Defendants' motion to dismiss, which is currently pending before the Court and ripe for review.

## II.  LEGAL STANDARD

### A. Rule 12(b)(1)

A court must dismiss a case pursuant to Federal Rule of Civil Procedure 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).

In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when

reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

**B. Rule 12(b)(6)**

Pursuant to Federal Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quotations omitted).

### III. DISCUSSION

For the reasons set forth herein, the Court concludes that it does not have jurisdiction to review either (1) USCIS's decision to revoke Colonial Marble's I-140 petition on behalf of Mr. Polyzopoulos, or (2) the State Department's denial of Mr. Polyzopoulos's visa application. As a result, the Court will **DISMISS** the Amended Complaint in its entirety.

### A. Prior Pending Motions

At the outset, the Court notes that on September 15, 2020, Plaintiffs filed a motion for summary judgment requesting that the Court grant the relief sought in Plaintiffs' original complaint. *See* Mot. for Summ. J., ECF No. 8, at 2. Also on September 15, 2020, Defendants filed a motion to dismiss Plaintiffs' original complaint for lack of subject matter jurisdiction. *See* Mot. to Dismiss, ECF No. 9, at 1. On October 3, 2020, however, Plaintiffs amended their complaint as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)(B). Plaintiffs' Amended Complaint, addressed in this Memorandum Opinion, is now the operative pleading in this case. As such, and also in light of the Court's jurisdictional holding herein, the Court **DENIES** Plaintiffs' [8] Motion for Summary Judgment and Defendants' [9] Motion to Dismiss, which both pertain to Plaintiffs' now-superseded complaint. *See Easter v. District of Columbia*, 128 F. Supp. 3d 173, 177 (D.D.C. 2015).

### B. Revocation of I-140 Petition

On June 30, 2020, USCIS revoked its approval of Colonial Marble's I-140 petition on behalf of Mr. Polyzopoulos. *See* Pls.' Ex. G (Not. of Revocation), ECF No. 14-3, at 1. In its revocation notice, USCIS explained that Colonial Marble had not met its burden of establishing Mr. Polyzopoulos's eligibility as an alien worker, specifically citing to insufficient evidence of a bona fide job offer, a failure by Colonial Marble to establish its own ability to pay the proffered wages, and an apparent misrepresentation of material facts. *See id.* at 3–12. In their Amended Complaint, Plaintiffs argue that USCIS's revocation decision was erroneous, *see* Am. Compl. ¶¶ 49–55, and request that this Court invalidate the revocation, *see id.* ¶ 65. Defendants argue in their motion, however, that the Court lacks jurisdiction to review a decision by USCIS to revoke an I-140 petition. *See* Defs.' Mot. at 17–24. For the reasons below, the Court agrees with Defendants

and finds that it has no authority to review USCIS's June 30, 2020 revocation of Plaintiffs' I-140 petition.

Two interlocking sections of the INA preclude this Court's review of USCIS's I-140 revocation decisions. To begin, "8 U.S.C. § 1252(a)(2)(B)(ii) provides, with one inapplicable exception, that 'no court shall have jurisdiction to review . . . any . . . decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the *discretion* of . . . the Secretary of Homeland Security.'" *Raval v. USCIS*, 369 F. Supp. 3d 205, 209 (D.D.C. 2019) (emphasis added). In turn, 8 U.S.C. § 1155 states that: "The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title." Importantly, "I-140 petitions are among the petitions that fall within the Secretary's § 1155 revocation authority and . . . the Secretary has delegated that authority to USCIS." *iTech US, Inc. v. Cuccinelli*, 474 F. Supp. 3d 291, 292 (D.D.C. 2020) (citing 6 U.S.C. § 271(b)(1); 8 C.F.R. § 205.2(a)).

The plain language of 8 U.S.C. § 1155 makes clear that USCIS "may" revoke I-140 petitions "at any time" for what USCIS "deems to be" sufficient cause. The Court finds that this statutory language provides "a grant of discretionary authority," *Raval*, 369 F. Supp. 3d at 209, which, in turn, 8 U.S.C. § 1252(a)(2)(B)(ii) places squarely outside of this Court's jurisdiction. The discretionary nature of USCIS's petition-revocation authority is convincingly evidenced by the fact that § 1155 "contains not one, not two, but three discretionary terms: 'may,' 'at any time,' and 'for what [it] deems to be.'" *Karakenyan v. USCIS*, 468 F. Supp. 3d 50, 56 (D.D.C. 2020) (quoting 8 U.S.C. § 1155). Furthermore, the D.C. Circuit has interpreted similar statutory language within the INA to denote agency discretion. *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005) (use of "may" and "deem" in 8 U.S.C. § 1153(b)(2)(B)(i) committed decision to the Attorney

9

General's discretion). And while the D.C. Circuit has not specifically addressed whether § 1155 divests courts of jurisdiction over USCIS petition-revocations, "ten circuits have concluded . . . that a decision made pursuant to § 1155 qualifies as 'discretionary' under the INA and is therefore not reviewable." *Karakenyan*, 468 F. Supp. 3d at 56; *see also iTech US, Inc.*, 474 F. Supp. 3d at 293 (collecting cases). Only the Ninth Circuit, over a vigorous dissent, has determined that § 1155's reference to "good and sufficient cause" supplies a non-discretionary standard, allowing for judicial review over petition-revocation decisions. *See ANA Int'l, Inc. v. Way*, 393 F.3d 886, 893–94 (9th Cir. 2004); *but see Poursina v. USCIS*, 936 F.3d 868, 875 (9th Cir. 2019) (recently describing that Circuit's position as "an outlier among the federal circuit courts" and declining to "extend such decision beyond its narrow holding").

"[T]he balance of [this] authority is so heavily weighted to one side as to almost tip over the scale." *Karakenyan*, 468 F. Supp. 3d at 55. And in accordance with this overwhelming authority, the five district courts in this jurisdiction to address the question have each concluded that § 1155 commits petition revocations exclusively to agency discretion and, therefore, places them outside the jurisdiction of Article III courts. *See iTech US, Inc.*, 474 F. Supp. 3d at 293; *Karakenyan*, 468 F. Supp. 3d at 56; *Raval v. USCIS*, 369 F. Supp. 3d 205, 212 (D.D.C. 2019); *Mohammad v. Napolitano*, 680 F. Supp. 2d 1, 6 (D.D.C. 2009); *Systronics Corp. v. INS*, 153 F. Supp. 2d 7, 12 (D.D.C. 2001). The Court will yield to the decidedly strong tilt of this decisional authority, which also rests on an interpretation of § 1155 that comports with this Court's own statutory analysis. As such, the Court concludes that it lacks jurisdiction to review USCIS's June 30, 2020 decision to revoke Colonial Marble's I-140 petition on behalf of Mr. Polyzopoulos.[3]

---

[3] Plaintiffs make an ancillary argument that USCIS's finding of "willful misrepresentation" remains subject to judicial review, even if USCIS's petition revocation is not reviewable in its entirety. *See* Pls.' Opp'n at 14. The Court is unpersuaded that any review of USCIS's finding of misrepresentations would permit the

## C. Denial of Consular Visa

Next, Plaintiffs ask this Court to invalidate the State Department's October 2019 decision to deny Mr. Polyzopoulos a consular visa and to compel the State Department to reconsider Mr. Polyzopoulos's visa application. *See* Am. Compl. ¶¶ 62–63. As explained in detail below, the Court finds that both the doctrine of consular non-reviewability and the standing doctrine prevent this Court from exercising jurisdiction over the State Department's visa determination.

### 1. Doctrine of Consular Non-Reviewability

To start, the doctrine of consular non-reviewability provides that "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). This doctrine derives from "the political nature of visa determinations and . . . the lack of any statute expressly authorizing judicial review of consular officers' actions." *Id.* The scope of the doctrine also aligns with Congress's decision to commit the adjudication of visa applications exclusively to consular officers. *See* 8 U.S.C. §§ 1201(a) & (g); *see also* 8 U.S.C. § 1361. For nearly a century then, courts in this jurisdiction have applied the doctrine of consular non-reviewability and "refused to review visa decisions of consular officials." *Saavedra Bruno*, 197 F.3d at 1159–60. The D.C. Circuit has also just recently reaffirmed that the doctrine of "[c]onsular non-reviewability shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021).

---

Court to review USCIS's discretionary revocation decision under 8 U.S.C. § 1155, for the reasons explained above. Moreover, USCIS did not predicate its revocation decision solely on a finding of willful misrepresentation, but also on Colonial Marble's failure to demonstrate a bona fide job offer and its inability to pay Mr. Polyzopoulos the proffered wages. *See* Pls.' Ex. G (Not. of Revocation), ECF No. 14-3, at 3–12.

In this case, the doctrine of consular non-reviewability precludes the Court from reviewing or invalidating the denial of Mr. Polyzopoulos's visa application. In October 2019, a consular officer from the State Department interviewed Mr. Polyzopoulos regarding his then-pending application for a consular visa. Am. Compl. ¶¶ 16–20. During the interview, the consular officer determined that Mr. Polyzopoulos had improperly obtained the labor certification supporting his I-140 petition, and, therefore, was not eligible for a visa under 8 U.S.C. § 1182(a)(5)(A). *See* Am. Compl. ¶¶ 16–20. On October 16, 2019, the consular officer sent Mr. Polyzopoulos a Visa Refusal Worksheet, which explained that "his visa application [was] refused" based on a finding that he was "ineligible to receive a visa" under "Section 212(a)(5A)" of the INA. Pls.' Ex. D (Visa Refusal Worksheet), ECF No. 14-1, at 17. Under the doctrine of consular non-reviewability, the Court lacks the authority to review or invalidate this denial of Mr. Polyzopoulos's visa application. *See Baan Rao Thai Rest.*, 985 F.3d at 1024. The Court has identified no statutory provision wherein Congress has otherwise provided for judicial intervention in a straightforward consular visa refusal, such as the one presented by Plaintiffs here.

To counter the conclusive sweep of the consular non-reviewability doctrine, Plaintiffs offer two arguments, neither of which is persuasive. First, Plaintiffs contend that the doctrine of consular non-reviewability does not apply in this case because the consular officer's October 16, 2019 visa refusal for Mr. Polyzopoulos "was not final," in light of Mr. Polyzopoulos's subsequent request to the State Department for reconsideration of the visa denial. Pls.' Opp'n at 7. As a threshold matter, Plaintiffs are correct that the doctrine of consular non-reviewability "is not triggered until a consular officer has made a decision with respect to a particular visa application." *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016). For example, courts have refused to apply the consular non-reviewability doctrine where the "visa application [at issue]

12

remains in administrative processing" and the plaintiff complains of an "unreasonable delay." *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98–99 (D.D.C. 2020); *see also Nine Iraqi Allies*, 168 F. Supp. 3d at 290–96. Plaintiffs' case, however, presents no such scenario. To the contrary, a consular officer *already rendered* a decision on the merits of Mr. Polyzopoulos's visa application, refusing the application due to Mr. Polyzopoulos's ineligibility under 8 U.S.C. § 1182(a)(5)(A). Pls.' Ex. D (Visa Refusal Worksheet), ECF No. 14-1, at 17. The fact that Mr. Polyzopoulos later requested reconsideration of that decision, does not alter the fact that Plaintiffs are now challenging the *substantive result* of the consular officer's decision to refuse Mr. Polyzopoulos's visa application. *See* Am. Compl. ¶¶ 59–65. Such a challenge to the merits of a final consular visa decision remains subject to the consular non-reviewability doctrine, which precludes judicial review. *See Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 3–4 (D.D.C. 2009).

Next, Plaintiffs argue that the consular officer "acted in bad faith" when denying Mr. Polyzopoulos's visa, and "in accordance with *Kerry v. Din*, 135 S. Ct. 2128, 2141 (2015), where a consular officer acts in bad faith and where the bad faith is plausibly and particularly alleged in the complaint, courts may look behind the visa refusal." Pls.' Opp'n at 8. Plaintiffs' reliance on *Din*, however, obfuscates the narrow exception they seek to invoke. Plaintiffs' "bad faith" argument rests on a limited exception to the consular non-reviewability doctrine that permits "an American citizen [to] challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). Where such a challenge exists, courts perform a "circumscribed" review to determine "whether the [consular officer] gave a 'facially legitimate and bona fide' reason for [the visa denial]," but "will neither look behind the exercise of that discretion, nor test it by balancing its justification."

*Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018) (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 769 (1972)).

Plaintiffs have not demonstrated the applicability of this narrow exception. First, Plaintiffs do not explain anywhere in their opposition brief how Mr. Polyzopoulos's visa denial has "burdened [a] citizen's constitutional rights." *Baan Rao Thai Rest.*, 985 F.3d at 1024; *see also* Pls.' Opp'n at 6–8. This alone is prohibitive. But even assuming that Mr. Polyzopolous's denial did implicate some valid constitutional interest of an American citizen, the consular officer provided a "facially legitimate and bona fide" reason for his visa denial. *Hawaii*, 138 S. Ct. at 2419. Specifically, the officer denied Mr. Polyzopoulos's visa application pursuant to 8 U.S.C. § 1182(a)(5)(A), citing to this statutory provision which requires a valid labor certification for alien workers seeking admission into the United States. *See* Pls.' Ex. D (Visa Refusal Worksheet), ECF No. 14-1, at 17. The officer then further explained his determination that "the labor certification in this case was obtained by fraud or misrepresentation of a material fact based on [Mr.] Polyzopoulos's responses at the consular interview." Am. Compl. ¶ 19. This rationale for Mr. Polyzopoulos's visa denial, which rests on a specific provision of the INA, provides "a facially legitimate reason for denial." *Singh v. Tillerson*, 271 F. Supp. 3d 64, 72 (D.D.C. 2017). At most, Plaintiffs "bad faith" argument suggests that the consular officer misunderstood or misapplied this statutory provision of the INA when adjudicating Mr. Polyzopoulos's visa application. *See* Am. Compl. ¶ 17. But the consular non-reviewability doctrine still "applies even where it is alleged that the consular officer failed to follow regulations, where the applicant challenges the validity of the regulations on which the decision was based, or where the decision is alleged to have been based on a factual error." *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 41 (D.D.C. 2020) (quotation omitted).

For the reasons set forth above, the Court concludes that Plaintiffs have not invoked any valid exception to the doctrine of consular non-reviewability. The Court, therefore, must apply the doctrine, which precludes review of Mr. Polyzopoulos's consular visa denial.[4]

### 2. Constitutional Standing

Beyond the doctrine of consular non-reviewability, Defendants also argue that Plaintiffs' do not have standing to challenge Mr. Polyzopolous's consular visa denial. *See* Defs.' Mot. at 16. The Court agrees. It is axiomatic that to establish Article III standing a plaintiff must demonstrate a concrete injury-in-fact, that is traceable to the defendant's conduct and redressable by the court. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021). And "[w]ith respect to standing, there is a long line of cases explaining that non-resident aliens lack standing to challenge the determinations associated with their visa applications, which belong to the political and not judicial branches of government." *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 5 (D.D.C. 2009) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)). This line of jurisprudence reflects the fact that "foreign nationals seeking admission have no constitutional right to entry." *Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018). In line with this precedent, Mr. Polyzopoulos, a non-resident alien, has no standing to challenge his visa denial in this case. *See, e.g.*, *Udugampola v. Jacobs*, 70 F. Supp. 3d 33, 36 n.1 (D.D.C. 2014) ("It is beyond dispute that Mr. Udugampola has no constitutional right to enter the United States, and also does not have standing to seek review of his visa denial.").

---

[4] Courts in this circuit have commonly referred to the doctrine of consular non-reviewability as "jurisdictional." The D.C. Circuit recently clarified, however, that the "jurisdictional" nature of the doctrine rests on the *unwillingness* of Article III courts to interfere with the consular prerogative of the Executive Branch. *See Baan Rao Thai Rest.*, 985 F.3d at 1029. Therefore, "[d]ismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)." *Id.* at 1027.

This leaves only Mr. Polyzopoulos's co-Plaintiff, Colonial Marble. Colonial Marble is the American company that sponsored Mr. Polyzopoulos's predicate I-140 petition before USCIS. *See* Am. Compl. ¶¶ 10–11. "With respect to purely statutory claims," however, "courts have made no distinction between aliens seeking review of adverse consular decisions and the United States citizens sponsoring their admission; neither is entitled to judicial review." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1164 (D.C. Cir. 1999). Instead, an American sponsor may present a cognizable claim where they themselves sustain a constitutional injury connected to the denial of the alien's visa application. *See, e.g.*, *Rohrbaugh v. Pompeo*, 394 F. Supp. 3d 128, 131–32 (D.D.C. 2019), aff'd, No. 19-5263, 2020 WL 2610600 (D.C. Cir. May 15, 2020) (explaining that "federal courts [may] review a consular officer's decision when the decision implicates the constitutional rights of a U.S. citizen"). But here, Colonial Marble has not presented any constitutional claims derived from the denial of Mr. Polyzopolous's consular visa. Without any such claim, Colonial Marble does not have standing to challenge the consular officer's denial of Mr. Polyzopolous's visa.

Finally, Plaintiffs' challenge to Mr. Polyzopoulos's visa denial must also confront the standing requirement of redressability. To demonstrate Article III standing, Plaintiffs not only need to show a concrete injury, but also must plausibly demonstrate how a judicial remedy would redress the harm alleged. *See Preczewski*, 141 S. Ct. at 797. For a remedy here, Plaintiffs ask the Court to invalidate the denial of Mr. Polyzopoulos's consular visa and compel the State Department to reconsider its decision. *See* Am. Compl. ¶¶ 58–65. But even assuming the Court had such authority, it is *implausible* that such a remedy would lead to Plaintiffs' desired result: a consular visa for Mr. Polyzopoulos. As described above, USCIS—in a nonreviewable exercise of agency discretion—has revoked its approval of Colonial Marble's I-140 petition on behalf of Mr.

Polyzopoulos.  *See* Pls.' Ex. G (Not. of Revocation), ECF No. 14-3, at 1.  Absent an approved I-140 petition, a consular officer "may not" issue a visa to an alien, like Mr. Polyzopoulos, seeking admission as an employment-based preference immigrant.  22 C.F.R. § 42.42; *see also* 8 U.S.C. § 1153(f).  Accordingly, the invalidation of Mr. Polyzopoulos's original consular visa denial or even an order compelling reconsideration would not plausibly lead to a different result for Plaintiffs, now that USCIS has revoked the I-140 petition supporting Mr. Polyzopoulos's consular visa application.  *See, e.g.*, *Karakenyan v. USCIS*, 468 F. Supp. 3d 50, 58 (D.D.C. 2020) ("Because the Court has dismissed his claims against USCIS, his I-526 petition will still be revoked, and Plaintiff will still be ineligible for an EB-5 visa."); *Raval v. USCIS*, 369 F. Supp. 3d 205, 211 (D.D.C. 2019) (D.D.C. 2019) (finding no standing where the failure to "obtain the prerequisite I-140 approval" precluded judicial redress).

For the reasons set forth above, the Court concludes that neither Plaintiff has established the Article III standing required to challenge Mr. Polyzopoulos's consular visa denial.  As such, the Court further lacks jurisdiction over Plaintiffs' related claims.

## IV.   CONCLUSION

In this case, Plaintiffs challenge (1) USCIS's decision to revoke its approval for an I-140 petition, filed on behalf of Mr. Polyzopoulos, and (2) the State Department's denial of his consular visa application.  As explained in this Memorandum Opinion, the Court has no authority to review or overturn these decisions.  First, USCIS's decision to revoke approval for an I-140 petition is discretionary and outside of this Court's jurisdiction.  Next, the State Department's decision to deny a consular visa is insulated from judicial review by the long-standing doctrine of consular non-reviewability.  Finally, Plaintiffs have not established their own standing to challenge the State Department's denial of Mr. Polyzopoulos's visa application.  For these reasons, the Court will

**GRANT** Defendants' [16] Motion and **DISMISS** the Amended Complaint in its entirety. Finally, and for the reasons set forth above, the Court also **DENIES** Plaintiffs' [8] Motion for Summary Judgment and Defendants' [9] Motion to Dismiss.

An appropriate Order will accompany this Memorandum Opinion.

**Date**: April 14, 2021

                                                         /s/
                                           COLLEEN KOLLAR-KOTELLY
                                           United States District Judge